MATTER OF REIMER

In Deportation Proceedings

A-11629955

*Decided by Board September 18, 1967*

Where respondent, a lawful permanent resident, following a few hours visit to
East Berlin in February 1964 was advised by the American Consul in Berlin
that his lifted Form I-151 was no longer valid for return to the United States
but that he could apply for a new visa, a process which could take a year to
complete, such advice is presumed to be correct and not to constitute a gross
miscarriage of justice in the absence of evidence of record that the consul
erred.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable
at time of entry—No immigrant visa or other valid
entry document.

Lodged: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered
without inspection.

ON BEHALF OF RESPONDENT:  
David Carliner, Esquire  
Washington, D.C. 20004  
(Oral argument)

Z. B. Jackson, Esquire  
580 Washington Street  
San Francisco, California 94111  
(Counsel of record)

ON BEHALF OF SERVICE:  
Irving A. Appleman  
Appellate Trial Attorney  
(Oral argument)

Respondent, a 28-year-old male, a native and citizen of Germany
admitted to the United States for permanent residence in 1959, testi-
fied that he went to Germany in 1963 to visit his sick mother. He ex-
pected to stay about six months. In January and February, 1964 he
visited East Berlin for a few hours. Upon his last return, he reported
to West German police that he had been asked to act as a spy. The
police lifted his alien registration card (Form I-151) and forwarded
it to the American consul. The respondent testified that in February,
1964 the consul told him that the card was no longer valid for return
to the United States, but that he could apply for a new visa, a process

443

which could take as long as a year to complete. Respondent took a visa application form but did not fill it out. A few months later, acting on the advice of a friend, he posed as a United States citizen, and applying at a different consulate, secured a United States passport in his own name. He reentered the United States as a United States citizen with the passport.

The special inquiry officer held that the consul's advice to respondent constituted a gross miscarriage of justice which should be corrected by considering respondent as having been admitted to the United States as a returning resident when he last entered. The special inquiry officer did this and terminated proceedings.

The Service contends that the record does not establish that the consul erred in advising respondent that his alien registration card could no longer be used to return because of the East Berlin visit. We believe this contention is correct. There is a presumption that a government official does his duty correctly. There is no evidence in this file to overcome the presumption. At the time of respondent's visit, the regulation (8 CFR 211.1) invalidated an alien registration card for use to return if the alien had traveled to "the Soviet Zone of Germany ('German Democratic Republic')." On the face of the regulation there is no exemption for a visit to East Berlin. (An informal inquiry with the State Department revealed that it was not until November 12, 1964 that the State Department issued instructions that East Berlin was not to be included in the term "Soviet Zone of Germany.") The presumption that consul acted properly in this matter is therefore not overcome by evidence of the record.

The special inquiry officer assumed that the consul failed to advise respondent that he could have obtained a visa as a returning resident—a process the special inquiry officer assumed could have been completed in a relatively short time. Here again there is a failure to overcome the presumption that consul acted properly. When the consul spoke of a new visa, he could well have meant a visa as a returning resident. When he spoke of the time involved, he could well have had in mind the time which it would have taken to determine whether the respondent was a returning resident (it is to be noted respondent committed a criminal act in the United States before his departure)—a determination which may have involved the advice of the Washington office. Consul might also have had in mind delay which could have been encountered because of administrative backlogs. We cannot on this record find there was a gross miscarriage of justice in the advice given to the respondent.

As far as this record shows, he needed a visa to enter and did not have one when he entered. The first charge is therefore sustained. It

is clear respondent entered the United States by representing himself to be a citizen of the United States. The second charge must therefore be sustained.

Respondent has applied for a waiver of documentary requirements. Counsel points out that respondent voluntarily reported the attempt to engage him in espionage. We shall return the case to the special inquiry officer for reconsideration in light of what we have stated, so that further evidence may be adduced if such is the desire of the parties, and so that the respondent may pursue any application for relief for which he believes he is eligible.

**ORDER:** It is ordered that the special inquiry officer's order of February 10, 1967 terminating the proceedings be and the same is hereby withdrawn.

*It is further ordered* that the proceedings be reopened for action not inconsistent with what we have stated in our discussion. The order of the special inquiry officer shall be certified to the Board.